ORIGINAL

Approved: *Courtney Heavey*
　　　　　COURTNEY L. HEAVEY
　　　　　Assistant United States Attorney

**22 Mag. 2130**

Before:　HONORABLE KATHARINE PARKER
　　　　　United States Magistrate Judge
　　　　　Southern District of New York

------------------------------------- X
　　　　　　　　　　　　　　　　　　　　: COMPLAINT
UNITED STATES OF AMERICA　　　　　　 :
　　　　　　　　　　　　　　　　　　　　: Violations of 18 U.S.C.
　　　　　-v.-　　　　　　　　　　　　　 : §§ 922(a)(1)(A), 922(g),
　　　　　　　　　　　　　　　　　　　　: and 2.
JESSE GIBSON,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　: COUNTY OF OFFENSE:
　　　　　　　　　Defendant.　　　　　　 : NEW YORK
　　　　　　　　　　　　　　　　　　　　:
------------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

　　　　　CHRISTOPHER DERCO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Firearms Trafficking)

　　　　　1.　From at least in or about November 2021 up to and including at least in or about March 2022, in the Southern District of New York and elsewhere, JESSE GIBSON, the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business did ship, transport, and receive firearms in interstate and foreign commerce, to wit, GIBSON sold firearms that had been transported in interstate commerce at various locations in the Manhattan, New York.

　　(Title 18, United States Code, Sections 922(a)(1)(A) and 2.)

### COUNT TWO
(Felon in Possession of Firearm)

2. On or about November 8, 2021, in the Southern District of New York and elsewhere, JESSE GIBSON, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a .22 caliber Ruger Charger, and the firearm was in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

### COUNT THREE
(Felon in Possession of Firearm)

3. On or about November 22, 2021, in the Southern District of New York and elsewhere, JESSE GIBSON, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a 9-millimeter, Springfield Armory XDS pistol, and the firearm was in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

### COUNT FOUR
(Felon in Possession of Firearm)

4. On or about January 14, 2022 in the Southern District of New York and elsewhere, JESSE GIBSON, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm, to wit, a 9-millimeter, Glock pistol, and the firearm was in and affecting commerce.

(Title 18, United States Code, Sections 922(g)(1) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

5. I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports, recordings, photographs, and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of

my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The November 8, 2021 Buy

6. Based on my involvement in the investigation, including in the November 8, 2021 controlled buy, my conversations with an undercover officer with the NYPD (the "UC") and other law enforcement officers, and my review of a visual and audio recording, I have learned the following:

   a. On or about November 8, 2021, the UC arranged to meet two individuals, "Individual-1" and an individual later identified as JESSE GIBSON, the defendant, in the vicinity of 405 East 105th Street so that the UC could purchase a firearm from GIBSON. The UC was equipped with an audio and video recording device and the UC met with and provided Individual-1 $1,300 in pre-marked currency to broker the deal.

   b. GIBSON whose face was not covered and was visible, approached the UC's car on the passenger side and greeted Individual-1. The UC asked GIBSON, in sum and substance, for his phone number and GIBSON entered the call number ending in 3272 ("Gibson's Phone") into the UC's phone.

   c. Based on information from Verizon, I know that Gibson's Phone is subscribed to JESSE GIBSON, the defendant.

   d. GIBSON handed the UC a plastic bag and Individual-1 handed GIBSON the pre-marked currency. The UC asked how much GIBSON wanted for another firearm that GIBSON had displayed, but GIBSON stated in sum and substance that he was not selling that gun. The UC thereafter drove away to a pre-determined location where law enforcement recovered the plastic bag and found that it contained a .22 caliber Ruger rifle ("Firearm-1") and ammunition, including a magazine and numerous cartridges.

   e. Based on my review of the video recording of the above-described buy, I know that JESSE GIBSON, the defendant, was the individual who sold the UC the gun because I was able to compare the individual in the surveillance video to a photograph from a prior arrest of GIBSON.

### The November 22, 2021 Buy

7. Based on my review of the UC's phone, I know that:

   a. On or about November 18, 2021, the UC texted JESSE GIBSON, the defendant, "Whats good fam," and "You forgot about me."

   b. On or about November 21, 2021, GIBSON texted the UC a photograph of a firearm, and stated "$1100."

   c. On or about November 22, 2021, GIBSON texted the UC "Get up get up business time." The UC replied, "Yo I be there before 2." The UC and GIBSON thereafter continued texting about details regarding the time and place of their meet up.

8. Based on my involvement in the investigation, including in the controlled buy, my conversations with the UC and other law enforcement officers, and my review of a visual and audio recording, I have learned the following:

   a. The UC was equipped with an audio and video recording device, and other members of law enforcement, including myself, conducted surveillance.

   b. The UC drove to the vicinity of 405 East 105th Street, where the previous buy on or about November 8, 2021 had taken place, and where the UC had agreed to meet JESSE GIBSON, the defendant.

   c. GIBSON approached the UC's car and got inside. The UC provided GIBSON with $1,100 in pre-recorded currency and GIBSON provided the UC with a plastic bag. GIBSON told the UC in substance and in part that he was waiting for his supplier in Long Island, which might allow him to drop prices in the future. GIBSON displayed another firearm, which he did not offer to sell to the UC.

   d. The UC then drove to a pre-determined meeting location and law enforcement recovered a plastic bag, inside of which was a white t-shirt and a 9mm, Springfield Armory XDS pistol ("Firearm-2") and one magazine, containing eight 9 mm bullets.

### The January 14, 2022 Buy

9. Based on my review of screenshots from the UC's

phone, I know that:

  a. On or about January 12, 2022, the UC texted JESSE GIBSON, the defendant, and, in substance and in part, expressed an interest in purchasing more firearms.

  b. On or about January 13, 2022, GIBSON texted the UC, instructing the UC to "Check your Telegram." Thereafter, the UC received photographs of a firearm through the social media application, Telegram.

  c. On or about January 14, 2022, the UC texted GIBSON, in substance and in part, asking GIBSON about the cost for the firearm and telling GIBSON that the UC's girlfriend could handle the purchase. GIBSON replied with "$1300," and GIBSON and the UC continued texting about the price and when to meet.

  10. Based on my involvement in the investigation, including in the controlled buy, my conversations with CI-1 and other law enforcement officers, and my review of video recordings, I have learned the following:

  a. On or about January 14, 2022, CI-1 met with law enforcement and was provided with $1,200 in pre-recorded currency. CI-1 was also equipped with a video and audio recording device, however the recording device failed during the controlled buy.

  b. CI-1 then called JESSE GIBSON, the defendant, and GIBSON directed CI-1 to meet in the vicinity of 405 East 105th Street. Once CI-1 arrived, GIBSON got inside CI-1's car and directed CI-1 to drive to the vicinity of 110th Street, and CI-1 and GIBSON went inside a nearby storage facility (the "Storage Facility").

  c. CI-1 observed GIBSON pull out a gun from a storage unit at the Storage Facility and place it in a plastic bag, before wrapping it in a white t-shirt, which GIBSON then gave to CI-1 in exchange for the $1,200 in pre-marked currency.

  d. Based on my review of surveillance footage from the Storage Facility, I know that CI-1 and an individual with the same physical build as GIBSON entered the Storage Facility around the time of the controlled buy and went to the second floor. Based on my review of records from the Storage Facility, I know that GIBSON rents storage unit number 12 on the

second floor of the Storage Facility and used his access card to access the Storage Facility during the time of the controlled buy on or about January 14, 2022.

       e.    CI-1 then met law enforcement at an agreed upon location, where law enforcement recovered a plastic bag, white t-shirt, a 9mm, Glock pistol ("Firearm-3") and a magazine with five cartridges.

### The January 26, 2022 Buy

11. Based on my review of text messages from CI-1's phone, I know that on or about January 26, 2022, JESSE GIBSON, the defendant, texted CI-1 the address "405 east 105 st 1av." CI-1 and GIBSON thereafter continued to text about meeting up.

12. Based on my involvement in the investigation, including in the controlled buy, my conversations with CI-1, other law enforcement officers, and my review of visual and audio recordings, I have learned the following:

       a.    On or about January 26, 2022, CI-1 met with law enforcement and was provided with an audio and video recording device and $2,800 in pre-recorded currency.

       b.    CI-1 then called JESSE GIBSON, the defendant, and GIBSON instructed CI-1 to meet in the vicinity of 106th Street and 1st Ave.

       c.    Once CI-1 arrived at the agreed-upon location, CI-1 got into a car, where GIBSON was sitting in the driver's seat. GIBSON gave CI-1 two white plastic bags, and CI-1 gave GIBSON $2,800. CI-1 thereafter met with law enforcement, who recovered the two white plastic bags, one of which contained a .22 caliber Cobra Derringer ("Firearm-4") and 2 rounds of ammunition, and the other which contained what appeared to be marijuana.

### March 3, 2022 Buy

13. Based on my involvement in the investigation, including in the controlled buy, my conversations with other law enforcement agents and CI-1, and my review of documents, records and audio recordings, I know that:

       a.    On or about March 3, 2022, at law enforcement's direction, CI-1 exchanged phone calls and text messages with JESSE GIBSON, the defendant, about meeting up to

purchase a firearm.

   b. CI-1 met with law enforcement and was provided an audio and video recording device and $1,800 in pre-recorded currency.

   c. CI-1 then drove to the agreed-upon location in the vicinity of 106th Street and 1st Avenue. GIBSON approached CI-1's car and got into the passenger's seat, while another individual ("CC-1") who was with GIBSON, got into the backseat of CI-1's car.

   d. GIBSON directed CC-1, in sum and substance, to give CI-1 the firearm, which CC-1 did, and in exchange, CI-1 gave CC-1 $900. GIBSON told CI-1, in sum and substance, that the firearm was a hot commodity and that was why the price was higher. GIBSON and CC-1 thereafter got out of CI-1's car and law enforcement met with CI-1 at an agreed upon location and recovered the firearm, which was identified as a 9mm Bearman Derringer ("Firearm 5").

   e. After GIBSON got out of CI-1's car, law enforcement approached GIBSON to make an arrest. GIBSON attempted to run, but was stopped by law enforcement and placed under arrest.

   14. Based on my participation in this investigation and my conversations with other law enforcement agents, I know that on or about March 1, 2022, CI-1 was shown a photo array containing six photographs, one of which was a photograph of JESSE GIBSON, the defendant. CI-1 positively identified the photograph of GIBSON as the individual from whom CI-1 had purchased firearms.

   15. Based on my training and experience, and my communications with other law enforcement agents, including a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF Special Agent") who is familiar with the manufacturing of firearms, I know that Firearm-1, Firearm-2, Firearm-3, Firearm-4, and Firearm-5 were not manufactured in New York State.

   16. Based on my review of searches of an ATF database, and my conversation with the ATF Special Agent, I know that from at least in or about November 2021 through in or about March 2022, JESSE GIBSON, the defendant, was not a licensed firearm dealer, importer, or manufacturer.

17. I have reviewed criminal history records pertaining to JESSE GIBSON, the defendant, which show that GIBSON was convicted on or about June 26, 2014, of criminal possession of a controlled substance in the third degree, in violation of New York Penal Law, Section 220.16(01), and sentenced to 90 months' imprisonment. GIBSON was also convicted on or about May 12, 2008, of attempted criminal possession of a weapon in the second degree, in violation of New York Penal Law, Section 265.03(01), and was sentenced to 3 years' imprisonment.

WHEREFORE, deponent respectfully requests that JESSE GIBSON, the defendant, be imprisoned or bailed, as the case may be.

_____
CHRISTOPHER DERCO
Detective
New York City Police Department

Sworn to before me this
4 day of March, 2022

_____
HONORABLE KATHARINE PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK